## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

BARBARA L. JUDKINS )
                                                  )
                 Plaintiff, )
                                                  )
v. )
                                                  )          Docket No. 2:06-CV-204-P-S
SAINT JOSEPH'S COLLEGE OF MAINE )
                                                  )
               Defendant. )

## ORDER ON PARTIAL MOTION TO DISMISS

Before the Court is Defendant's Amended Motion and Memorandum in Support of Amended Motion to Partially Dismiss Complaint (Docket # 12).  Through this Motion, Defendant seeks to dismiss Plaintiff's claims of sex and age discrimination because Plaintiff failed to timely file her charge with the Equal Employment Opportunity Commission ("EEOC").  For the reasons stated below, the Court GRANTS the Motion.

**I.       STANDARD OF REVIEW**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory."  <u>Nicolaci v. Anapol</u>, 387 F.3d 21, 24 (1st Cir. 2004).  In accordance with this standard, the Court accepts as true Plaintiff's well-pleaded factual averments and draws "all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory."  <u>Roth v. United States</u>, 952 F.2d 611, 613 (1st Cir. 1991).  Generally, a court may only dismiss a claim pursuant to Rule

12(b)(6) if it "appears to a certainty that the plaintiff would be unable to recover under any set of facts." State Street Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 87 (1st Cir. 2001) (quoting Roma Constr. Co. v. Arusso, 96 F.3d 566, 569 (1st Cir. 1996)).

Ordinarily, a court may not consider any documents outside of the complaint or not expressly incorporated in the complaint on a motion to dismiss, without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(b); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). Nonetheless, there is a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Alternative Energy, Inc., 267 F.3d at 33. When a document is central to the plaintiff's complaint, the document "merges into the pleadings" and may be properly considered by the court in determining a motion to dismiss. See id.

In this case, most of the above-mentioned elements are present with regard to the EEOC Notice of Charge of Discrimination (Attach. 1 to Docket # 6) and the EEOC Dismissal and Notice of Rights (Attach. 2 to Docket # 6). Both are official documents, and neither party contests the authenticity of either document. In addition, these EEOC documents are central to Plaintiff's claims of sex and age discrimination. Thus, in deciding the pending motion, the Court considers the EEOC Notice of Charge of Discrimination and the EEOC Dismissal and Notice of Rights without converting the motion into one for summary judgment. Beyond these limited documents, the Court declines to consider the affidavits and attachments proffered by both Plaintiff and the College.

In addition, although Plaintiff is now represented by counsel, the Court notes that the complaint was originally filed pro-se.  Thus, in construing the complaint, the Court is mindful that pleadings by pro-se litigants are held "to less stringent standards than formal pleadings drafted by lawyers . . . ."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Taking the facts as presented in the complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court briefly lays out the facts of the case below.

## II.    BACKGROUND

On February 28, 2005, Defendant Saint Joseph's College of Maine ("Saint Joseph's College" or "the College") entered into a contract with Dr. Barbara Judkins, which provided that Dr. Judkins would be the lead faculty for the Saint Joseph's Cayman Island campus from May 2, 2005 through August 12, 2005.  The contract provided for housing and proscribed the circumstances and time period during which Saint Joseph's College could terminate the contract.

Upon arrival at Grand Cayman Island, Dr. Judkins notified Saint Joseph's College that the housing provided was unacceptable due to substandard conditions, hurricane damage and its location in an unsafe area.  Dr. Judkins also noted that a male colleague had been provided above standard housing.  During the course of Dr. Judkins' employ on Grand Cayman, this housing problem remained continually contested but unsolved.

Seven weeks into the summer semester, Saint Joseph's College requested that Dr. Judkins orient a younger person to her teaching responsibilities.  Based at least in part on the advice she obtained from Florida Attorney Richard Leigh, Dr. Judkins declined to orient the younger person, perceiving that to do so would be a breach of contract. Subsequently, Dr. Judkins was locked out of her office and then denied access to her

office possessions, the building and the campus.  The College asserted that this denial of access was the result of Dr. Judkins having an invalid passport without a work permit. Dr. Judkins then verified her work permit with Immigration Services on the island and sent documentation of her valid passport and work permit to the College.

On June 27, 2005, Dr. Judkins received a registered letter indicating termination from her employment.  A male colleague who did not have a current work permit was not locked out of his office and was permitted to continue in his position.  A younger person was assigned to Dr. Judkins' teaching responsibilities.

On May 31, 2006, Plaintiff's Notice of Charge of Discrimination (Attach. 1 to Docket # 6) was sent to the EEOC and was received by the EEOC on June 4, 2006.  On July 21, 2006, the EEOC through the Dismissal and Notice of Rights (Attach. 2 to Docket # 6) dismissed the complaint because it was not timely filed with the EEOC.  The Dismissal and Notice of Rights also provided Plaintiff permission to sue within ninety days of receipt of the notice.

On October 18, 2006, Plaintiff filed her complaint in the Superior Court in Cumberland County, Maine asserting causes of action for breach of contract, and sex and age discrimination under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act ("ADEA").  Defendant removed the case to federal court on November 20, 2006 based on federal question and diversity jurisdiction.  Defendant filed a Partial Motion to Dismiss on the same day.

## III.   DISCUSSION

Both Title VII and the ADEA require that an aggrieved individual comply with filing deadlines before suit may be instituted.  See, e.g., 29 U.S.C. § 626 (d); Miriam v.

<u>Rumsfeld</u>, 404 F.3d 556, 564 (1st Cir. 2005); <u>see also</u> 42 U.S.C. § 2000e-5(e) & (f).  The determination of the appropriate filing deadline depends on the existence of a state or local agency with the  authority to enforce an ordinance or statute against employment discrimination.  <u>See</u> 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e); 29 C.F.R. § 1601.13.  In a state with an agency, a "deferral state," the aggrieved individual  must file the charge with the EEOC within three hundred days of the alleged violation.  29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e).  Where a state lacks such an agency, or where the agency lacks subject matter jurisdiction over the charge, the requisite filing deadline is one hundred and eighty days.  29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e).

Plaintiff asserts that she is entitled to the three hundred day filing deadline. Plaintiff argues that Maine is the deferral state, with an agency, the Maine Human Rights Commission, that has the authority to grant or seek relief in this case.  She argues: "[I]t is evident that Maine had jurisdiction over the Plaintiff's employment discrimination claims against the Defendant, so the 300 day 'deferral state' filing requirement applied . . . ." (Pl.'s Resp. in Opposition to Def.'s Am. Mot. to Partially Dismiss Compl. (Docket # 15) at 3.)  Saint Joseph's College asserts that although Maine is a "deferral state," here "[t]he Maine Human Rights Commission does not have authority to grant or seek relief from discrimination against non-Maine residents working abroad."   (Def.'s Am. Mot. and Mem. in Supp. of Am. Mot. to Partially Dismiss Compl. (Docket # 12) at 5.)  Therefore, Defendant claims that the requisite filing period was one hundred and eighty days.  The requisite filing deadline is determinative as Plaintiff admits through a concession by her counsel that she did not satisfy the one hundred and eighty day deadline.  (Pl.'s Resp. in Opposition to Def.'s Am. Mot. to Partially Dismiss Compl. (Docket # 15) at 1.)

### A.      WHERE THE CLAIMS AROSE

Plaintiff alleges sex and age discrimination in violation of Title VII and the ADEA based on a series of events that transpired in the Cayman Islands.  Construing the complaint liberally, Plaintiff asserts several specific situations that gave rise to her allegations.  Plaintiff claims that she was provided substandard housing in the Cayman Islands when she arrived and throughout her time there, whereas a male colleague was provided above standard housing.  Plaintiff asserts that the College falsely claimed that she lacked a valid work permit for the Cayman Islands, but no similar allegation was made against a male colleague who did lack the requisite permit.  Plaintiff alleges that she was locked out of her office in the Cayman Islands when a male colleague was not. In addition, Plaintiff alleges that Saint Joseph's College breached its contract and had a younger individual assume Plaintiff's teaching responsibilities.

During the relevant time period, Plaintiff was living and working in the Cayman Islands, and the events that underlie Plaintiff's complaint occurred in the Cayman Islands. Plaintiff nowhere claims that she is a resident of the state of Maine, and, in fact, Plaintiff admits through a concession by her counsel that she was a domiciliary of Florida and a temporary resident of the Cayman Islands during the relevant time period.  (Pl.'s Resp. in Opposition to Def.'s Am. Mot. to Partially Dismiss Compl. (Docket # 15) at 3.)  Saint Joseph's College is located in Maine and decisions were made in Maine regarding Plaintiff's employment, but this remains Plaintiff's only connection to the state.  See Arnold v. Cargill, Inc., 012086, 2002 WL 1576141, at *4 (D. Minn. July 15, 2002) ("The fact that [Defendant's] headquarters are located in and contested company-wide policies emanated from Minnesota is insufficient . . . .").  Any discrimination against Plaintiff

occurred in the Cayman Islands, not Maine.  Thus, the question for the Court is whether the Maine Human Rights Commission through the Maine Human Rights Act has the authority to grant or seek relief for any discrimination that occurred in the Cayman Islands.[1]

### B.       EXTRATERRITORIAL APPLICATION

There is a well-established presumption against the extraterritorial application of a state's statutes.  See Rathje v. Scotia Prince Cruises, 01-123, 2001 U.S. Dist. LEXIS 21266, at *32 (D. Me. Dec. 20, 2001); Union Underwear Co. v. Barnhart, 50 S.W.3d 188, 190 (Ky. 2001); see also Frost v. C.W. Cone Taxi & Livery Co., 139 A. 227, 228 (Me. 1927) ("As the statutes of this state have no extra-territorial force, . . . ."); Arizona Commercial Mining Co. v. Iron Cap Copper Co., 110 A. 429, 433 (Me. 1920).  This broad presumption guards against possible conflicts with other states' laws and violations of the Commerce Clause.  See Union Underwear Co., 50 S.W.3d at 190, 193; Arnold, 2002 WL 1576141, at *2; see also e.g., 39 M.R.S.A. § 113 (instructing how, in the context of workers' compensation, the exemption for nonresident employees shall apply when another state's workers' compensation act also applies).

Clear and explicit language is necessary to overcome the presumption against extraterritorial application of a statute.  See, e.g., Equal Employment Opportunity Comm. v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991) (superseded by statute) ("We assume that Congress legislates against the backdrop of the presumption against extraterritoriality. Therefore, unless there is the affirmative intention of the Congress

---

[1] The Court notes that few other courts have addressed the extraterritorial application of a state's human rights statute.  Those courts that have addressed the issue, however, have decided against the extraterritorial application of the state's human rights statute.  See generally, Union Underwear Co. v. Barnhart, 50 S.W.3d 188 (Ky. 2001); Arnold v. Cargill, Inc., 012086, 2002 WL 1576141 (D. Minn. July 15, 2002).

clearly expressed, we must presume it is primarily concerned with domestic conditions." (internal quotations and citations omitted)).  The Maine Human Rights Act is devoid of any language indicating that it applies outside of the state of Maine, and there is no indication that the Act applies to a nonresident working outside the state.   To the contrary, section 4566 of the Maine Human Rights Act states that the Maine Human Rights Commission

> has the duty of investigating all conditions and practices *within the State* which allegedly detract from the enjoyment, by each inhabitant of the State, of full human rights and personal dignity. . . . Based on its investigations, it has the further duty to recommend measures calculated to promote the full enjoyment of human rights and personal dignity by all the inhabitants of this State.

5 M.R.S.A. § 4566 (emphasis added).  From this section, it is evident that the intended focus of the Maine Human Rights Commission is discrimination occurring within Maine and affecting Maine residents.

In addition, it is apparent that the Maine legislature is aware of the presumption and has specifically addressed how certain Maine statutes are to interact with other states' legislation and apply to nonresidents.  See, e.g., Maine Workers' Compensation Act of 1992, 39-A M.R.S.A. § 113; Uniform Interstate Family Support Act, 19-A M.R.S.A. § 2961 (providing the bases for jurisdiction over nonresidents); Maine Insurance Code, 24-A M.R.S.A. § 4366 (allowing claims of nonresidents against domestic insurers).  For example, section 113 of the Maine Workers' Compensation Act of 1992 provides an exemption from the Act for nonresident employees and the potential for reciprocity with other states.  39-A M.R.S.A. § 113.  Section 113(2) states that: "If the exemption provided in subsection 1 applies, the workers' compensation laws or similar laws of the other state are the exclusive remedy against the employer in that state for any injury,

whether resulting in death or not, received by an employee while working for that employer in this State." Id. § 113(2). Had the Maine legislature intended the Maine Human Rights Act to apply outside of Maine, it is reasonable to assume that it would have so provided.

Nonetheless, Plaintiff argues that St. Joseph's College is an "employer" under the Maine Human Rights Act, and that Plaintiff herself is an "employee."[2] Although the College may qualify as an "employer" and Plaintiff as an "employee," the application of broad and general terms is insufficient to overcome the presumption against extraterritorial application. See, e.g., Arabian Am. Oil Co., 499 U.S. at 250-55 (providing that boilerplate language such as "citizen" and "commerce" are ambiguous and thus insufficient to meet the requisite affirmative showing that Congress intended the legislation to apply beyond the United States); Union Underwear Co., 50 S.W.3d at 191 ("Under the presumption against extraterritorial application, the use of the terms 'any' or 'all' to persons covered by the legislation does not imply that the enacting legislature intended that the legislation be applied extraterritorially."); Arnold, 2002 WL 1576141 at *3. In short, the Court concludes the Maine Human Rights Commission, through the Maine Human Rights Act, does not have the authority to grant or seek relief for any acts of discrimination that occurred in the Cayman Islands. Therefore, the Court finds that there was no "deferral state," and Plaintiff was required to comply with the one hundred and eighty day filing requirement.

---

[2] The Maine Human Rights Act defines an employer as "any person in this State employing any number of employees, whatever the place of employment of the employees, and any person outside this State employing any number of employees whose usual place of employment is in this State; . . . ." 5 M.R.S.A. § 4553(4). Employee is defined as "an individual employed by an employer." Id. § 4553(3).

## IV.     CONCLUSION

Because Plaintiff failed to comply with this filing requirement, suit for sex and age discrimination is foreclosed and the Partial Motion to Dismiss is hereby GRANTED (Docket # 12).[3]  The breach of contract claim remains before the Court.

**SO ORDERED.**

   /s/ George Z. Singal
United States Chief District Judge

Dated this 20th day of April 2007.

---

[3] Normally, when a court grants a motion to dismiss, the court should consider whether to grant leave to amend the complaint.  Here, however, amending the complaint would be futile given Plaintiff's admission that she did not comply with the one hundred and eighty day filing requirement.  See Steir v. Girl Scouts of the USA, 383 F.3d 7, 11-12 (1st Cir. 2004) (providing that pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires," unless the amendment "would be futile, or reward, inter alia, undue or unintended delay.").